Is it fleet us? Good afternoon, Your Honor. Yes, sir. Good afternoon, Your Honors. And may it please the court. My name is Victor flight us from Tupelo, Mississippi, here on behalf of Mr John Rogers, the plaintiff appellant. The district court aired in two respects. First, the district court aired by finding that Mr Rogers is testimonial speech was as an employee and not as a citizen. Second, the district court aired by finding that the individual defendants were entitled to qualified immunity. John Rogers worked almost 30 years in the Department of Corrections, rising through the ranks with an impeccable work history for honesty, integrity and service to the people of his state. On a given day, he encountered a situation where a deputy where a warden superintendent of the state penitentiary interfered with an investigation deliberately and directly and assaulted an investigator for the state of Mississippi. That led to Mr Rogers being temporarily suspended until fully exonerated by an M. D. O. C. Investigation. Ultimately, after new management took over, they desire to suppress two things. The results of an investigation that showed that an inmate had been beating beaten and a cover up was attempted. And secondly, to protect the superintendent because of his actions in attempting to interfere deliberately with Mr Rogers's investigation. After returning back to work, Mr Rogers learned that at the highest levels of the Department of Corrections, a concerted effort was underfoot to suppress material information from the FBI and to protect a wrongdoer, Superintendent Lee. This came directly from the commissioner of the Department of Corrections herself. When this was communicated to Mr Rogers, he took two acts. One, he submitted the report to the FBI. Second and relevant to this case issue before this court, he appeared in the Circuit Court of Sunflower County on March 13, 2017 and testified about all of this under subpoena in open court. We have to begin with the fact that the district court got it wrong right from the start. There was no dispute that Mr Rogers's testimony was the result of subpoenaed speech. It was admitted by the defendants in their answer. Yet the district court concluded that there was no evidence that Mr Rogers testified pursuant to a subpoena. Does that matter? I think under Lane, it actually doesn't. And that goes to a case recently handed down by this court in Beville versus Fletcher. Uh, docket number 24 to 50 February 11, 2022 in Beville versus Fletcher, which I would submit to the panel is pretty square on what went on here. It was an affidavit submitted voluntarily by a captain of a police department who was subsequently terminated for that speech activity, which was the submission of the affidavit to get a change of venue. Here, Mr Rogers testified to the illegal actions of the superintendent of the Department of Corrections and also testified in open court. It might not matter whether he was subpoenaed or not, but doesn't it matter that he wasn't subpoenaed essentially by the prosecuting authority? But Bobo's counsel, the accused essentially in this weird hearing they're having, isn't isn't it Bobo's counsel who asked him via subpoena to show up and testify? He was subpoenaed by investigator Bobo's attorney. And let me let me make clear to this Bobo was the one being accused in this hearing. He was the he was the investigator who had been assaulted by Superintendent Lee during the course of Superintendent Lee's deliberate, deliberate attempt to circumvent a lawful investigation taking place at Unit 29. But speaking again to the Lane issue, Your Honor, but the Lee was the one who brought charges and there were counter charges. So this was all being hashed out in the circuit court of Sunflower County based on Mississippi law's requirement to probable cause issues with law enforcement have to be brought in circuit court. It's a little confusing with all these fights and everything. It's not. I get that a police officer, an investigator, someone in law enforcement, part of their job is, oh, we've an investigation. We're gonna go to court. We've charged them as part of the investigative team. You have to go and help the prosecution. It doesn't seem like this hearing was that right. I mean, Bobo's individual was Bobo's lawyer with the state or an outside lawyer. No, Mr Bobo hired private counsel, not not. It's not a prosecutor saying, Oh, of course, you're the investigator. You gotta come help us prove the case. It's a private lawyer who's got a client who's saying, Come help us, Your Honor. The point you're making is precisely the point. Bevel versus Fletcher speaks to it. The Howell case speaks to it. Anderson speaks to and understand this. The employees who Commissioner Hall and the defendant Smith attempted to have testified falsely at that preliminary hearing and did so all kept their jobs. The three employees who testify for Mr Bobo, Mr Rogers, Mr Bobo and Mr Carter were let go. So the testimonial aspect of his speech is critically important to the analysis that this court must make. And we believe that the district court got it completely wrong when it did not apply Lane as Lane has been applied by this court repeatedly since 2015. The court's reliance on Gibson versus Kirkpatrick was completely misplaced because, in that case, your honors, Lane wouldn't have been applicable because Lane had already come down and couldn't establish clearly established law because the events had taken place too far in the past. As of June 23, 2017, Lane was well established law that told any public official you are operating at your peril if you terminate a state service employee for their testimonial statements under subpoena in a court of law. Well, but if those testimonial statements were outside the course and scope of the public official's employment duties, I read the management judge's opinion here. The district court's opinion is applying Lane. And what the court concluded was that Rogers didn't come forth with any evidence showing that his testimony in court that day was outside the scope of his employment. So am I misreading the case or my oversight? No, your honor, you're not misreading the case. What the district court did is it didn't look to the recitation of facts, the same facts that have been provided to this court to establish the fact that it was outside of tell me about that. All right. So yes. First, your honor, if we look at the factors, this court considers job descriptions are not dispositive and the court applied Kirkpatrick is making Mr Rogers's position as a law enforcement officer dispositive on the question of his testimonial. He was director of investigations, right? He was taken off that invest. He was. He held that position. But the job description was viewed as determinative by the district court, and that's air. It's only a factor to be considered. And in this case, he wasn't even testifying as the investigator. He was pulled off the investigation that same day. It was Mr Hunt's investigation and Mr Cole Terrell's investigations that were at issue, not Mr Rogers's investigation. The investigations were they were taken over because of Judge Costa said there's one fight. Then they leave the room there. By the time they come back, there's another fight. I mean, there's this whole series of things that happened, but all of it was incident to an investigation that he was initially involved in, right? That he was involved in initially at its job. I'm sorry, your honor, that that was but his testimonial. His testimony at Mr Bobo's preliminary hearing had nothing to do with that, and it certainly was not dispositive on the issue, because Kirkpatrick says we don't just look at job descriptions, and there's nothing to indicate that testifying in matters like he testified to had anything to do with his normal job duty. Well, Lane, the plaintiff was testifying about matters learned during the course of a job. And you should the difference those in the question here is is testifying in such matters part of the job duty, right? I mean, the subject in Lane was clearly the subject matter of the plaintiff's testimony was based on learned things learned during in the course of one's employment. Absolutely. And and as he as he would have testified to as a witness, which is what he was at the time that he testified and is a speech activity that citizens having nothing to do with public employment engage in all of the time. Further, your honor, your honor, the expression in this case took place in open court in Sunflower County, not at his duty station, not at the office. That augurs a finding that a speech was that a citizen, whether the speech was intended to serve the purposes of the employer. This speech was directly contrary to Policia Hall's effort to have Cole Terrell, a Mississippi investigator, testify falsely in circuit court. This is in the record. Cole Terrell took a tape administrative here. I know that has nothing to do with the First Amendment. There was no finding on the First Amendment, but they vindicate your client under state law. But your client and offer reinstatement and back pay your client declined that. I guess he didn't want to go back to this work environment. I can understand that. But what did he get the back pay? Did he take the back? There were there were. He did not get full back pay. Your honor is the short answer. Under the guidelines for the E. A. B. Mr Rogers was denied full back pay, and he was denied any claim for compensatory damages arising from denied fully got some back. He got some back, but not full back. What you're seeking here is what he declined. He's probably not entitled to here. What are you seeking here? If you were to prevent, we're seeking the remainder of the back pay as well as an award of compensatory damages. And if successful attorneys pensatory, like emotional distress? Yes, your honor. Mental anguish, emotional distress, loss of his position matters of that sort, your honor. So there's a position. He got his position back. The he was reinstated to a different position. He was an offer of reinstatement was made. By that point, he had taken state retirement and the complexities involved in him having been able to come back. Had he been able to remain in the position and not been wrongfully terminated, he would have continued working for several more years. Your honor. He was denied in short, an honorable retirement after almost 30 years of service. Another factor, your honor relevant is whether the employer directed the speech at issue. And there's nothing about the speech, the testimonial speech that Mr Rogers made an open court that the whether the speech was made confidentially in the workplace or otherwise, this speech was made in open court. His actions were confidential throughout because he was operating with an administration that had a corrupt motive in what it was doing. He had no choice. This was this was certainly a speech that a citizen would engage in whether the speech is of the kind engaged by other citizens. Lane recognized as paradigmatic speech, testimony by citizens in open court and the duty to testify truthful. That's exactly what John Rogers did directly contrary to his employers desires. And because he did so, an almost 30 year honorable career was destroyed and I don't believe that the district court's decision giving short shrift to the testimonial nature of his speech and the importance of his speech should stand. Finally, your honor, whether the speech is made through the chain of command again, that's a factor that speaks to you. There's no question about public concern here. The motive is clear. After that hearing, the defendant Sean Smith was recorded saying, I sure hate that John Rogers testified at that hearing. That's not evidence of motive. I don't know what is the testimony from individuals who had direct communication with Felicia Hall that she was furious having learned about what was testified to at the hearing speaks to your honor. I believe my time is close to being out. You've saved time for about I have Williams. Afternoon. May it please the court. My name is Chad Williams, Mississippi Attorney General's Office, and I represent Felicia Hall and Sean Smith who were both sued in their individual capacities for First Amendment retaliation. This court should affirm the district court's grant of summary judgment in their favor for two reasons. First, the district court correctly dismissed Rogers' First Amendment retaliation claim because his speech was within his ordinary job duties as the chief law enforcement officer over investigations at the Mississippi State Penitentiary at Parchment and not as a citizen. Second, Rogers cannot show that at the time he was fired that it was clearly established that the speech at issue was protected under the First Amendment. As to the first point, the Supreme Court in Garcetti v. Sybilos established that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes. And while six years later in Lane v. Franks, the court established that testimony under oath by a public employee outside the scope of that employee's duties, ordinary job duties, is speech as a citizen for First Amendment purposes. It was undisputed in that case, as Judge Costa pointed out, that Lane's testifying before a federal grand jury was not part of his ordinary job duties. And the Supreme Court . . . That's right. Were there any post-Lane cases you can cite where the plaintiff, the public employee, testified in court and a court said, no, not protected speech, it falls outside of Lane? Not like this, Your Honor, because in this case, Mr. Rogers was in a very unique position being essentially the apex investigator over all investigations at the prison, whether it was staff on inmate or inmate on one of those cases, primarily because this is such a unique case. There's a Tenth Circuit and Seventh Circuit case that are somewhat similar, but we don't have to get into that. If he had . . . you agree there was a subpoena? Yes, Your Honor. Okay, the district court missed that. And you agree it was Bobo's counsel who subpoenaed him, not some state prosecutor? Well, I don't know which counsel subpoenaed him, but I believe the court's telling him to be there, not one lawyer or another. I guess, do you agree Bobo's counsel is the one who called him? Because lawyers do say, I called this witness. Right. He was called during Bobo's case. I can see that. What would have happened to him if he didn't show up for court for that? Well, the court . . . Because if the prosecutor wants you there, I'm saying with his job, I'm saying if the prosecutor wants you there and you're an investigator and you don't show up, I'm guessing you're going to be in big trouble on the job. Right. But if this counsel for Bobo is the one who calls you and you don't show up, is anything going to happen to you in your employment? Well, I would imagine so, Your Honor. All of the CID investigators that were present came to that hearing, and his boss, Sean Smith, the defendant in this case, came to that hearing and gave testimony. And my friend indicated that people were fired and the department was decimated after this event. Sean Smith testified at that hearing and was asked by Bobo's counsel, you know, you've seen the report. You're the one that makes the hiring and firing decisions. Is Mr. Bobo still with you? And he said, yes, he is, indicating that he had not found that Bobo had done anything wrong. So, I don't know that his being nearby subpoena had any real impact. Everyone that was there came down and gave testimony, including Smith. And that's in the record at 199, well, after about 209 is where Smith's testimony is. Let me give you a hypothetical. There's a traffic stop, a few cops, they arrest someone, one of the officers gets in an altercation with the driver, not as part of the criminal prosecution, but the driver brings a civil rights excessive force case, you know, which happens all the time. We see those all the time. And one of the officers, the other officer, not the one in the altercation, goes and is called by the plaintiffs, the civil rights plaintiffs' attorney to come testify and to say the cop says, yeah, I saw my partner, I mean, he beat the guy up pretty good. Is that protected speech? That's employee speech, Your Honor. The officer, and I'm assuming this isn't an officer that was passing by on the road, this was an officer, say, involved in the initial stop, developing probable cause, maybe a state trooper, developing his own probable cause, engaged in an investigation, backup shows up, gets in the altercation. That's all arising out of that trooper's duty. I'm assuming this officer you're talking about is going to show up to court in his uniform, he's going to give testimony, he's going to go down in his uniform, he's not going to put in for time off to go give this testimony? No, because the prosecution is not calling him. But I would imagine he's still going to do all those things. You don't think it's any different when the prosecution calls him to testify versus when a civil plaintiff calls him to testify? No, Your Honor. I think it goes back. It's not whether when the speech was given, it was when the material was Well, there's cases, and these are the cases, and they say that, again, the subject matter, even in Lane, the subject matter of the speech was part of the duties. The question is, is testifying about these matters, and of course, if a cop goes, he's part of the prosecution team, that's clearly part of what cops and law enforcement generally are supposed to do. But you don't think there's a difference if they're not testifying as part of a prosecution but in a separate civil suit, you think it's all, because they learned it in the course of their job, you think it's all Yes, Your Honor, and I think there could be some difference. So cops are given less protection than, there's a fight in the prison cafeteria and a cook is called to testify. That, you would agree, would be within Lane. If a cook at the Parchman Prison is called to testify. That's right, because he's not charged by Mississippi statute with investigating the incident at the prison. I would agree, Your Honor. And I, you know, for example, if Mr. Rogers has a very broad charge under 47-554 to investigate everything that happens in the prison. What about when he's taken off the investigation? Well, it's still a routine. Can you move more toward where the cook is in Judge Costa's example? No, Your Honor. And I would go back to say someone's developing probable cause, say we have a state trooper on the side of the road developing his, conducting his investigation, asking for a driver's license, speaking to the driver. His simply being a fact witness, I don't think, changes things. All officer testimony at probable cause hearings are based on facts. They are fact witnesses. Well, but was this, I mean, what Lane says is, testimony under oath by a public employee outside the scope of his ordinary job duties, his speech as a citizen. Is this situation ordinary? I believe it is, Your Honor. Is this investigation ordinary for the Department of Corrections? Any investigation inside Mississippi State Penitentiary would be inside his ordinary job duties by statute. I can't say that any of the events that happen are ordinary. Some are going to be one-off. But anything that violates MDOC regulations, violates state law, he's got, Mr. Rogers was charged with investigating. Well, he's charged with investigating except he was removed from the investigation here because he was kind of involved in the events in question. I mean, again, does that take us out of what would ordinarily be part of his job duties? Well, as my friend Mr. Flight has pointed out, well, is this the kind of thing an ordinary citizen would do? No. They wouldn't have been involved in the investigation to begin with. He was there. They could have observed the fights happen all the time in prisons. Correct. All kinds of folks can observe fights. That's right. To your example, the cook, he's not charged with investigating that fight. I'll give you an example. Lane was, I guess he had knowledge that an ordinary citizen wouldn't have. I don't think it's whether the citizen is ordinary or the witness is ordinary, but is this within the ordinary, well, the ordinary job duties? But it was not Lane's ordinary job duty to go down to the courthouse and give testimony about an investigation, or in his case, give testimony to a grand jury. Here as a law enforcement officer, that is what they regularly do is go and give testimony about events, especially when you're talking about probable cause hearings where they're going to lay out facts to determine whether a case is going to go forward. But what about, I know I keep throwing hypotheticals at you, let's say there's an employment, well, this is an employment dispute in the prison, but one that doesn't involve this plaintiff. Someone sues for discrimination. A prison guard says, I'm being discriminated against. And Rogers goes down there to testify for that plaintiff in a civil suit and says, yeah, I think he was being discriminated against. Here's why. This is what I observed on the job, blah, blah, blah. Is that protected speech in a civil suit like that? And it could be because of how broad the statute is that covers what all Rogers is charged with investigating because it has to do with even violations of MDOC regulations. So if there was a question about a violation of a regulation, it could be. I'll give you an example. It sounds like you're basically saying if you're in law enforcement, anything you learn on the job is not going to be protected speech. Not law enforcement is a blanket rule, Your Honor, but the apex chief investigator at the Parchman Penitentiary is. But I will give you an example of where I think he would not be. He's in the cafeteria. He overhears two staff members talking about embezzling from the Little League concession stand. Has nothing to do with Parchman. Has nothing to do with him. But he calls the Sunflower County Sheriff and says, these guys are stealing a mint. He gets dragged into it, goes and testifies there as a fact witness about what he heard. That's going to be citizen speech. But those occasions are going to be few and far between given his role, responsibilities, and duties as the chief of investigations at Parchman. So I would point out, I hinted at this earlier, and this relates to Gibson v. Kilpatrick. They are like that case. Here, plaintiff, Mr. Rogers, didn't bring forward any evidence that he did go off on his own time, submit time off to go give citizen speech, went in his own car, went in his, you know, blue jeans and a t-shirt. He went there along with his other employees and his boss and gave testimony about this incident that occurred at Parchman. In Gibson, the court noted that Garcetti's rule is a broad one, even if it may lead to a distasteful result. And the court, I think, reiterated that again in the Forster v. Blesky case, which is very recent, and we submitted a 28-J letter about three weeks ago on that issue. I think the case that gets more down to the employment duties here is the Corn case that the court decided back in 2020 that had to do with federal highway investigators who were charged with detecting fraud with regard to Mississippi State troopers. They detected a ghost ticket system whereby troopers were writing ghost tickets that were nothing ever actually occurred. They were writing ghost tickets to increase their funding, and they reported this to the National Transportation Safety Board. This court found there was no real difference between the regular employment duties of detecting fraud and detecting this particular fraud. I think that goes to this case where Mr. Rogers is a very unique sworn law enforcement officer. He is not your typical beat police officer who is charged with investigating everything at the state penitentiary. Mr. Rogers made a few arguments in his brief. Well, I would like to point out we've got to be real clear about what the speech is we're talking about here. Mr. Rogers conceded in the district court that his providing a report to the FBI was not citizen speech. That was employee speech, and he did that at 316 in the record. We get to the Fifth Circuit. In his initial brief, he tries to shift away from that and says that reporting to the FBI was outside of his job duty. He does that in his initial brief at 25 on page 50 and then again in his reply on page 8 and 9. It is clear that his providing the report to the FBI was within his job duty. Mr. Rogers drafted a memorandum, which is in the record at 132, that outlines his relationship with FBI agent Henry. It talks about what a great relationship they have, how they work together, how he regularly provides him information. After the, so 133 through about 143, there's a series of emails that show how well they've been working together over time. That's the speech we're talking about in this case, his providing the report to the FBI. Once that speech was cast as employee speech, he can't change the nature of the speech by changing the audience, and that's what they're trying to do here. Forced to re-release recently, this court reaffirmed that you can't convert this employee speech into citizen speech by going to a different audience. In fact, Rogers, in his reply brief, seems to hang the entire case on this issue by saying there's a profound relevance to this litigation. His testimony revealed for the first time that the investigation of these matters was being picked up by the FBI. We submit that's the real speech here that this whole suit is about, and he conceded in the district court that that was employee speech, not citizen speech. Regardless of all of this, Planoff has been unable to point to either a case on point or some robust consensus to show where any of the speech he engaged in was protected citizen speech as opposed to unprotected employee speech. That's why I believe Hall and Smith would respectfully request that this court affirm the district court's summary judgment in their favor. And if there are no other questions, I'm done. All right, thank you, Mr. Williams. Mr. Planoff? Thank you, Your Honors. Let me repeat what I said opening and what the brief that we submitted to this court briefing has been about. This is about Mr. Rogers' testimonial speech before the Circuit Court of Sunflower County wherein he related matters involving public corruption and public wrongdoing. That's what this case is about. Was that testimony tantamount to what he had also reported to the FBI? He did not report to the FBI or submit any report regarding Superintendent Lee's efforts to obstruct justice, so no. Was it similar with respect to the report he submitted? He did submit the report. The report was prepared by Mr. John Hunt, not by Mr. Rogers. So then we run into a question getting back to Garcetti about who controls the speech or the document. There were several issues there. There were no such issues, and the issue regarding his testimony falls squarely within length.  of the First Amendment and your precedence. It is open season on honest law enforcement making reports of public misconduct, particularly where those law enforcement officers go into court. And when you go into court, if you're not the judge, you have to take off your robe. You've got to take off whatever considerations you have and testify truthfully. Whatever your political belief, whatever your ideology, whatever your perspective on any matter is, every citizen is required to do so. These defendants engaged in an effort to subvert justice. John Rogers had no truck with that and took to stand and gave his testimony and paid a price that no long-time civil servant should pay. Mr. Rogers is not rare. There are thousands of John Rogers throughout this circuit, and a decision accepting that interpretation puts every earnest public employee at risk. Because if we cannot stand up under the First Amendment for testimonial speech by public employees, we've gutted the First Amendment, I'm afraid to say. The occasion should be rare. We shouldn't have to be looking, Judge Wilson, at whether or not he clocked out. We shouldn't be having to look at whether he went in a private automobile or not. Did he? I have no idea. What we should be looking to is that he was a public employee with the duty to speak the truth and that he did so, and because he did so, he paid a price. That's the relevant inquiry, and that he was doing so not at the behest of his employer, but actively to thwart an effort by that employer to obstruct justice. I'm trying to figure out where you draw the line. Let's say a police detective worked on a murder investigation for a few years. Prosecution asked him to come testify. He shows up in court. On the stand, he says, you know what, I don't think the defendant did it, and he gets fired. Does that protect his speech? Yes. Even though it was his investigation, that does seem to be exactly what his job duties are, testifying for the prosecution in pursuit of his investigation. Testifying on behalf of the prosecution, truthfully. His testimony is truthful. He's a public employee. He was under a duty to testify truthfully. If he testified truthfully, now, if his giving that honest testimony was consistent with the prosecutor's goal to have him testify truthfully as opposed to testifying squirrelly, then I would say it's a close call. But let's be clear. The occasion where a public employee testifies about public malfeasance and is retaliated against and left without a remedy should be rare. That should be rare because we honor testimonial speech above all other speech. Otherwise... We still have to grapple with Lane that maybe concedes all of that, but says, if you're testifying within the scope of your ordinary employment duties or job duties, then answer that question. Your Honor, I would say this. The part that you stop at is the testimonial speech. The employer gambles on whether or not that employee is testifying as a citizen or as an employee every time it engages in an act of retaliation. But that employer is on notice that if I retaliate against this person after they've testified, I understand I could be violating the law. Now, it may not be determined for a while later, but Lane provided. And, in fact, that's exactly what the Howell decision has said, Anderson has said, Beville versus Fletcher. Your Honors, I see my time is up. I simply want to suggest... Your time has expired. Yes, Your Honor. Your case is under submission. Last case for today, Smith versus Heath.